**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE MARCELLA LEE BARKER, AKA Marci Barker, AKA Marci Vanni Barker, *Debtor*, | No. 14-60028 BAP No. 13-1393 |
| SPOKANE LAW ENFORCEMENT FEDERAL CREDIT UNION, *Appellant*, v. MARCELLA LEE BARKER; ROBERT DRUMMOND, Chapter 13 Trustee; OCWEN LOAN SERVICING, LLC, *Appellees*. | OPINION |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Pappas, Kurtz, and Jury, Bankruptcy Judges, Presiding

Argued and Submitted October 3, 2016
Seattle, Washington

Filed October 27, 2016

Before: William A. Fletcher, Ronald M. Gould,
and N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

## SUMMARY[*]

### Bankruptcy

The panel affirmed the Bankruptcy Appellate Panel's affirmance of the bankruptcy court's decision to disallow a creditor's late-filed claims in a Chapter 13 proceeding.

Agreeing with the Seventh Circuit, the panel held that if a creditor wishes to participate in the distribution of a debtor's assets under a Chapter 13 plan, it must file a timely proof of claim under Federal Rule of Bankruptcy Procedure 3002. The debtor's acknowledgment of debt owed to the creditor in a bankruptcy schedule does not relieve the creditor of this affirmative duty.

### COUNSEL

Quentin M. Rhoades (argued) and Francesca di Stefano, Sullivan Tabaracci & Rhoades P.C., Missoula, Montana, for Appellant.

Robert Drummond (argued), Great Falls, Montana; Kraig C. Kazda, Kazda Law Firm P.C., Great Falls, Montana; for Appellees.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

N.R. SMITH, Circuit Judge:

If a creditor wishes to participate in the distribution of a debtor's assets under a Chapter 13 plan, it must file a timely proof of claim. The debtor's acknowledgment of debt owed to the creditor in a bankruptcy schedule does not relieve the creditor of this affirmative duty.

## BACKGROUND FACTS

On September 6, 2012, debtor Marcella Lee Barker filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Montana. Later that day, in response to the filed petition, the bankruptcy court issued an Official Form B9I, titled "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" ("Notice"). The Notice stated that the deadline for creditors[1] to file a proof of claim was January 8, 2013. On September 8, 2012, the Bankruptcy Noticing Center sent the Notice to the Appellee, Spokane Law Enforcement Federal Credit Union ("Credit Union"), by first class mail. On September 19, 2012, Barker timely filed her Chapter 13 plan with the bankruptcy court.[2] According to her attached certificate of

---

[1] As noted in the Notice, a different deadline applies to a proof of claim filed by a "governmental unit." *See* Fed. R. Bankr. P. 3002(c)(1). This alternative deadline is not relevant in this case as Appellee is not a governmental unit.

[2] A Chapter 13 debtor must file a Chapter 13 plan within fourteen days after filing a Chapter 13 petition. Fed. R. Bankr. P. 3015(b).

mailing filed with the court, the plan was also sent to the Credit Union that day via first class mail.

On September 19, 2012, Barker also properly filed schedules of her assets and liabilities.[3]  In these schedules, Barker listed the Credit Union as a secured creditor holding a $6,646.00 purchase money security interest in a 2004 Ford F-150.  Barker also listed the Credit Union as an unsecured creditor holding a $47,402.00 claim that had previously been secured by an unidentified automobile, which Barker's ex-husband had sold.

Barker moved to amend and modify the Chapter 13 plan several times over the next few months.  Each time such a motion was filed, Barker sent a notice to the Credit Union.  In addition, each time the bankruptcy court entered an order confirming the amended plan, the Bankruptcy Noticing Center notified the Credit Union.

On May 30, 2013, more than four months after the deadline to file a proof of claim expired, the Credit Union filed three claims with the bankruptcy court: a secured claim for $5,490.78 and unsecured claims for $28,293.94 and $24,587.47.[4]  In accordance with the Local Bankruptcy Rules

---

[3] In 2012, the Federal Rules of Bankruptcy Procedure required Chapter 13 debtors to list their assets and liabilities on Official Form B6, and its subparts. *See* Fed. R. Bankr. P. 9009.  On December 1, 2015, Official Form B6 was replaced by Official Form B 106.  6 West's Fed. Forms, Bankruptcy Courts § 1:20 (4th ed.).

[4] The copies of the proofs of claims submitted in the excerpts of record appear to assert two unsecured claims for $28,293.94 and $24,587.47.  These numbers are inconsistent with the Appellant's brief

for the United States Bankruptcy Court for the District of Montana, the Trustee sent a "Notice of Late Filed Claims" to the Credit Union on June 7, 2013.[5]  On June 10, 2013, the Credit Union requested a hearing "to contest the tardy response."  In this request, the Credit Union asserted that the claims were belated, because a "disgruntled employee" failed to timely file the claim.  On July 31, 2013, the Credit Union filed a formal motion with the bankruptcy court requesting the court to allow the three claims.  The court held a hearing on the matter on August 2, 2013.  The court denied the Credit Union's motion and disallowed the claims because the proofs of claims were not timely filed.

On August 12, 2013, the Credit Union filed a notice of appeal with the bankruptcy court, and the appeal was taken to the Ninth Circuit Bankruptcy Appellate Panel ("BAP").  On

---

which list the amount of the unsecured claims as $28,293.84 and $24,597.47.

[5] Rule 3002-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Montana provides as follows:

> Late filed proofs of claim in Chapter 12 or 13 cases shall be deemed disallowed, without need for formal objection by the trustee or a hearing, if the trustee sends a notice to the late filing creditor using Mont. LBF 21. If a creditor files a response and requests a hearing within thirty (30) days of the date of the notice, then the creditor shall notice the contested matter for hearing pursuant to Mont. LBR 9013-1 . . . . If the creditor fails to file a written response to the objection to the late filed claim within thirty (30) days of the date of the notice provided by Mont. LBF 21, the failure to respond shall be deemed an admission that the objection should be sustained by the Court without further notice or hearing.

March 28, 2014, the BAP affirmed the bankruptcy court's decision to disallow the late filed claims. On April 24, 2014, the Credit Union filed a timely notice of appeal to this court.

## STANDARD OF REVIEW

"Whether a claim may be disallowed in a bankruptcy proceeding on the ground that the proof of claim was not timely filed pursuant to Rule 3002(c), Fed.R.Bankr.P., is a question of law subject to de novo review." *IRS v. Osborne (In re Osborne)*, 76 F.3d 306, 307 (9th Cir. 1996) (italics omitted). Whether the Credit Union has asserted an informal proof of claim is also a question of law subject to de novo review. *See Wright v. Holm (In re Holm)*, 931 F.2d 620, 622 (9th Cir. 1991).

## DISCUSSION

In order to fully understand the intricacies of the legal questions presented in this case, a short summary of Chapter 13 bankruptcy proceedings is helpful.

A petition filed under Chapter 13 helps overextended debtors reorganize their debt—while allowing them to keep their assets—by using "current and future income to repay creditors in part, or in whole, over the course of a three-to five-year period." *HSBC Bank USA, Nat'l Ass'n v. Blendheim (In re Blendheim)*, 803 F.3d 477, 485 (9th Cir. 2015). A Chapter 13 case begins, like all other bankruptcy cases, "with the filing of a petition and the creation of an estate, which comprises the debtors' legal and equitable interests in property." *Id.* at 484 (citing 11 U.S.C. § 541; Fed. R. Bankr. P. 1002(a)). As soon as a debtor files a bankruptcy petition, all entities are immediately prohibited from further

pursuing collection efforts against the debtor or the debtor's estate. *Id.* (citing 11 U.S.C. § 362). Along with the petition, a debtor must also file a schedule of assets and liabilities and a statement of financial affairs. Fed. R. Bankr. P. 1007(b)(1).

In order to collect a debt from a debtor filing a Chapter 13 bankruptcy petition, an unsecured creditor must file a valid "proof of claim," which has gone through the "allowance process set forth in 11 U.S.C. § 502." *In re Blendheim*, 803 F.3d at 484–85. A secured creditor, who wishes to receive distributions under a Chapter 13 plan, must also file a valid proof of claim. *See id.* at 485; *see also Schlegel v. Billingslea (In re Schlegel)*, 526 B.R. 333, 342–43 (B.A.P. 9th Cir. 2015). However, a secured creditor, who does not wish to participate in a Chapter 13 plan or who fails to file a timely proof of claim, does not forfeit its lien. *In re Blendheim*, 803 F.3d at 485 ("A creditor with a lien on a debtor's property may generally ignore the bankruptcy proceedings and decline to file a claim without imperiling his lien, secure in the *in rem* right that the lien guarantees him under non-bankruptcy law: the right of foreclosure.").

A bankruptcy court may disallow a claim for many reasons, including if the proof of claim was untimely. 11 U.S.C. § 502(b)(9); *In re Blendheim*, 803 F.3d at 485. In order for a proof of claim to be timely, a creditor generally must file it within "90 days after the first date set for the meeting of creditors."[6] Fed. R. Bankr. P. 3002(c). If a creditor fails to file a timely proof of claim, a debtor or trustee may file a claim on the creditor's behalf within thirty

---

[6] There are a handful of exceptions to the deadline for filing proofs of claims, none of which apply here.

days after the creditor's ninety-day clock has expired. Fed. R. Bankr. P. 3004.

The Credit Union admits that it filed its proofs of claims late. Thus, the bankruptcy court properly rejected the claims. However, it argues that the bankruptcy court still should have allowed it to participate in the Chapter 13 plan, because Barker listed the debt she owed the Credit Union in her bankruptcy schedules. We disagree.

The Federal Rules of Bankruptcy Procedure clearly provide that, in the Chapter 13 context, "[a]n unsecured creditor or an equity security holder *must* file a proof of claim or interest for the claim or interest to be allowed." Fed. R. Bankr. P. 3002(a) (emphasis added). The Ninth Circuit has made it clear that this straightforward language should be given its "plain meaning" and enforced accordingly. *Gardenhire v. IRS (In re Gardenhire)*, 209 F.3d 1145, 1148 (9th Cir. 2000). In addition, "in a highly statutory area such as bankruptcy," the Ninth Circuit prescribes "[c]lose adherence to the text of the relevant statutory provisions." *Id.* ("[I]n a Chapter 13 proceeding: 'Where the statutory language is clear, our "sole function . . . is to enforce it according to its terms."'" (quoting *Rake v. Wade*, 508 U.S. 464, 471 (1993)). A plain reading of the applicable statutes and rules places a burden on each Chapter 13 creditor to file a timely proof of claim. A claim will not be allowed if this burden is not satisfied.

There is other evidence, besides the plain language of the statute, that indicates Congress intended to place such a burden on the creditor. Specifically, a creditor in the Chapter 11 context is not always required to file a proof of claim. *Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers,*

*Inc.)*, 293 B.R. 489, 495 (B.A.P. 9th Cir. 2003). Both the Federal Rules of Bankruptcy Procedure and the federal statutes governing Chapter 11 bankruptcy make clear that "in chapter 11 cases 'it shall not be necessary for a creditor' to file a proof of claim unless the claim is either not scheduled or is scheduled as disputed, contingent or unliquidated." *Id.*; Fed. R. Bankr. P. 3003(c)(2); 11 U.S.C. § 1111(a). Similar language (relieving a creditor of the burden of filing a proof of claim if the debtor has scheduled the claim) is absent from the rules and statutes governing Chapter 13 bankruptcy. This purposeful omission indicates Congress's intent to require all creditors wishing to enforce their claims to file a proof of claim in the Chapter 13 context. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

Bankruptcy schedules serve multiple purposes independent of a proof of claim and are as vital to the bankruptcy plan as the proof of claim. Bankruptcy courts use debtors' schedules to determine whether debtors are eligible for the particular relief they seek. *Guastella v. Hampton (In re Guastella)*, 341 B.R. 908, 918 (B.A.P. 9th Cir. 2006) ("The debtors' schedules should be the starting point to a determination of the debtor's aggregate debts. . . . However, the schedules are not dispositive. If the debtors' schedules were dispositive, then eligibility could be created by improper or incomplete scheduling of creditors." (omission in original) (quoting *Quintana v. IRS (In re Quintana)*), 107 B.R. 234, 238–39 n.6 (B.A.P. 9th Cir. 1989), *aff'd*, 915 F.2d 513 (9th Cir. 1990)). Creditors also "rel[y] on the schedules to

determine what action, if any, they [will] take in the matter." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001). A creditor may chose not to pursue a claim after evaluating all of a Chapter 13 debtor's debts and the proposed repayment plan. *Perry v. Certificate Holders of Thrift Sav.*, 320 F.2d 584, 589 (9th Cir. 1963) ("There are many cases where creditors, although listed on the books of a bankrupt as such, will not be able to participate on an equal basis with other general creditors."). The proof of claim plays the important role of "alert[ing] the court, trustee, and other creditors, as well as the debtor, to claims against the estate," and the creditor's intention to enforce the claims. *In re Daystar of Cal., Inc.*, 122 B.R. 406, 408 (Bankr. C.D. Cal. 1990); *see also Adair v. Sherman*, 230 F.3d 890, 896 (7th Cir. 2000). Simply put, "[t]he requirement that creditors be scheduled is not a substitute for the further provision . . . that creditors' claims be proved." *Perry*, 320 F.2d at 589.

A variety of courts have disallowed creditors' late filed claims despite the fact that they were listed on the debtor's bankruptcy schedules. *See, e.g.*, *Bowden v. Structured Invs. Co. (In re Bowden)*, 315 B.R. 903, 907 (Bankr. W.D. Wash. 2004); *In re Greenig*, 152 F.3d 631, 632–34 (7th Cir. 1998) (disallowing late filed claim even though debtor listed the debt in a bankruptcy schedule and the bankruptcy court confirmed the debtor's reorganization plan, which included the debt at issue). We agree with these courts. In a Chapter 13 case, a creditor must file a timely proof of claim in order to participate in the distribution of the debtor's assets, even if the debt was listed in the debtor's bankruptcy schedules.

**I.  Whether or not Barker's listing of debt owed to the Credit Union was a judicial admission, it is not sufficient to meet the Credit Union's burden of affirmatively filing a timely proof of claim.**

The Credit Union argues first that, under the doctrine of judicial admissions, Barker must pay all the debts she listed in her bankruptcy schedules.  The Ninth Circuit has acknowledged the doctrine of judicial admissions.  *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  *Id.* (quoting *Dery v. Gen. Motors Corp. (In re Fordson Eng'g Corp.)*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982)).  Judicial admissions are "conclusively binding on the party who made them."  *Id.*

Although we have acknowledged this doctrine, we have never declared that a bankruptcy schedule constitutes the "formal admission" required for the application of the doctrine.  We need not reach this question here either.  As outlined above, a creditor who wishes to participate in a Chapter 13 plan has an affirmative duty to file a proof of claim. A debtor's acknowledgment of debt in a bankruptcy schedule—whether or not that is a judicial admission—does not satisfy this affirmative duty.  Congress chose to require Chapter 13 creditors to file proofs of claims that demonstrate their intent to enforce their claims; a judicial admission by a debtor does not fulfill this strict requirement or its purpose.

## II. Barker's listing of debt owed to the Credit Union in her bankruptcy schedules does not constitute an informal proof of claim.

Creditors, failing to file a timely formal proof of claim, often assert that an informal proof of claim can function to establish the creditor's claims. *See Cty. of Napa v. Franciscan Vineyards, Inc. (In re Franciscan Vineyards, Inc.)*, 597 F.2d 181, 183 (9th Cir. 1979). The Ninth Circuit has two requirements for a document to qualify as an informal proof of claim: (1) the document "must state an explicit demand showing the nature and amount of the claim against the estate," and (2) the document must "evidence an intent to hold the debtor liable." *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Rests., Inc.)*, 754 F.2d 811, 815 (9th Cir. 1985). Examples of an informal proof of claim are "demands against the estate" or "correspondence between a creditor and the trustee or debtor-in-possession which demonstrate an intent on the part of the creditor to assert a claim against the bankruptcy estate." *Sullivan v. Town & Country Home Nursing Servs., Inc. (In re Town & Country Home Nursing Servs., Inc.)*, 963 F.2d 1146, 1153 (9th Cir. 1991).

The Credit Union argues that Barker's listing of debt she owed to the Credit Union in her bankruptcy schedules constitutes an informal proof of claim, which is sufficient to preserve its claims. More specifically, the Credit Union asserts that there is no requirement that the writing establishing the informal proof of claim must come from the creditor.

The Credit Union's argument ignores the explicit requirement that the creditor must somehow demonstrate its

intent to hold the debtor liable. As explained above, the filing of a proof of claim (which evidences the creditor's decision to hold the debtor liable) plays an important role in Chapter 13 bankruptcy proceedings. This function applies equally to an informal proof of claim. In order to establish an informal proof of claim, a creditor must have taken some affirmative action to assert its claim within the statutorily prescribed time frame. *In re Bowden*, 315 B.R. at 907 (rejecting argument that debtor's schedules alone suffice to establish an informal proof of claim). The Credit Union has failed to cite any legal authority that has held that a debtor's bankruptcy schedules alone qualify as an informal proof of claim. Moreover, in all of the cases the Credit Union cites in support of its position, the creditors took some sort of affirmative action to demonstrate their intent to enforce their claims prior to the filing deadline. *See, e.g.*, *Fyne v. Atlas Supply Co.*, 245 F.2d 107, 108 (4th Cir. 1957) ("We agree that mere knowledge on the part of the trustee or of the referee in bankruptcy as to the existence of a claim is not sufficient basis for allowing the filing of an amended claim nor is the listing of the claim in the bankrupt's schedules sufficient. Here, however, there is much more than this."); *Scottsville Nat'l Bank v. Gilmer (In re Pitts)*, 37 F.2d 227, 229 (4th Cir. 1930) (allowing late filed claim where "the trustee conferred with the officers and the attorney for the bank frequently with regard to matters connected with the estate"); *Clapp v. Norwest Bank Hastings, N.A. (In re Clapp)*, 57 B.R. 921, 924 (Bankr. D. Minn. 1986) (allowing late filed claim where creditor "clearly and frequently asserted its intention to pursue its claim" in letters to the debtor's attorney and in interactions with the court).

Barker's bankruptcy schedules simply do not meet either of the prongs required to establish an informal proof of claim. The Barker-drafted documents are not an explicit demand and

do not demonstrate the Credit Union's intent to hold Barker liable for the listed debt. Accordingly, we affirm the bankruptcy court's conclusion that the informal proof of claim doctrine does not apply in this case.

**III.    Barker's listing of debt owed to the Credit Union in her bankruptcy schedules does not constitute a debtor's proof of claim.**

Federal Rule of Bankruptcy Procedure 3004 and 11 U.S.C. § 501(c) provide that, if a creditor does not file a timely proof of claim, the debtor or trustee may file a proof of claim for the creditor. The Bankruptcy Rules specifically require that the debtor's proof of claim be filed in the thirty day period immediately following the creditors' deadline to file their proofs of claims. Fed. R. Bankr. P. 3004. In this case, the Credit Union's deadline to file was January 8, 2013. Therefore, Barker, or the Trustee, had from January 9, 2013, until February 7, 2013, to file a proof of claim on behalf of any creditors.

The Credit Union argues that Barker's bankruptcy schedules constitute a debtor's proof of claim. This argument is not persuasive. First, the bankruptcy schedules (acknowledging the debt at issue) were not filed within the applicable thirty-day time frame. Thus, just considering the issue of timing, Barker's bankruptcy schedules do not meet the requirements of Rule 3004.

Timing aside, Barker's bankruptcy schedules do not qualify as a debtor's proof of claim. Congress adopted Rule 3004 in addition to the Rules requiring Chapter 13 debtors to file schedules of their assets and liabilities. Therefore, Rule 3004 requires that debtors make an additional showing of

their desire to include an unasserted claim in their Chapter 13 plan after receiving notice of which creditors intend to enforce their claims. Barker never made this additional showing. Therefore, the filing requirements of Rule 3004 have not been satisfied, and Barker's bankruptcy schedules do not constitute a debtor's proof of claim.

**IV.    The principles of equity do not permit the bankruptcy court to retroactively extend the deadline for the Credit Union to file its proofs of claims.**

Finally, the Credit Union argues that equity favors allowing its claims. Specifically, the Credit Union argues that, if its claims are not allowed, it will suffer a severe loss while the other creditors receive an undeserved windfall. While this may be true, the Ninth Circuit has repeatedly held that the deadline to file a proof of claim in a Chapter 13 proceeding is "rigid," and the bankruptcy court lacks equitable power to extend this deadline after the fact. *In re Gardenhire*, 209 F.3d at 1148 ("Our precedents support the conclusion that a bankruptcy court lacks equitable discretion to enlarge the time to file proofs of claim; rather, it may only enlarge the filing time pursuant to the exceptions set forth in the Bankruptcy Code and Rules."); *In re Osborne*, 76 F.3d at 308; *Zidell, Inc. v. Forsch (In re Coastal Alaska Lines, Inc.)*, 920 F.2d 1428, 1431–33 (9th Cir. 1990); *Ledlin v. United States (In re Tomlan)*, 102 B.R. 790, 792, 796 (E.D. Wash. 1989), *aff'd*, 907 F.2d 114 (9th Cir. 1990).

Further, allowing the bankruptcy court to retroactively extend the deadline in this case would thwart the purpose of Chapter 13:

> The purpose of Chapter 13 is 'to serve as a flexible vehicle for the repayment of part or all *of the allowed claims* of the debtor.' (Emphasis added.)   Sen.Rept. No. 95–989, Pub.L. 95-598, 92 Stat. 2549, 95th Cong., 2d Sess. (1978), p. 141, reprinted in U.S. Code Cong. & Admin.News 1978 at 5787, 5927. In order to effectuate this purpose, it is essential that all unsecured creditors seeking payment under the plan file a proof of claim. A date certain for such filings is crucial to the ability to determine the full extent of the debts and evaluate the efficacy of the plan in light of the debtor's assets and foreseeable future earnings.

*In re Tomlan*, 102 B.R. at 792 (alteration in orginal). Barker's Chapter 13 plan will only be successful if she and the Trustee "know, early on, what claims must be paid." *Id.* at 794 (quoting *In re Goodwin*, 58 B.R. 75, 77 (Bankr. D. Me. 1986)).   Barker will not get the "fresh start" she seeks if creditors are continually allowed to add additional claims far after the deadline to file has expired. *Id.* (quoting *In re Goodwin*, 58 B.R. at 77).

## CONCLUSION

In order to participate in distributions of Barker's assets under her Chapter 13 plan, the Credit Union was required to file a proof of claim by the prescribed deadline. Because the Credit Union's proof of claims were untimely, the bankruptcy court properly rejected them.

**AFFIRMED.**